UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

RUFINA HERNANDES, REYNA MEZA, JOSE GABRIEL SANGURIMA, MARIA REYES, and MARIA ZUMBA QUINDE on behalf of themselves and others similarly situated,

Plaintiffs,

v.

LO SEWING, INC., SL SEWING INC., MARIA GALLEGOS, SALIM ABOUHAMRA a/k/a SALIM ABOHAMRA a/k/a SALIM HAMRA, and RAFOUL ABOUHAMRA, a/k/a RAFOUL ABOHAMRA a/k/a RAFOUL ABOU HAMRA,

Defendants.

Case No.: 1:24-cv-02882-NCM-RML

---

## PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION FOR A DEFAULT JUDGMENT

Michael Taubenfeld (michael@fishertaubenfeld.com)
FISHER TAUBENFELD LLP
225 Broadway, Suite 1700
New York, New York 10007
Phone: (212) 571-0700
Facsimile: (212) 505-2001

Elissa Devins (devins@nylag.org)
NEW YORK LEGAL ASSISTANCE GROUP
100 Pearl St 19th Fl.
New York, NY 10004
Phone: (212) 613-5000

*ATTORNEYS FOR PLAINTIFFS*

**PRELIMINARY STATEMENT**

Plaintiffs Reyna Meza, Jose Gabriel Sangurima, Maria Reyes, and Maria Zumba Quinde[1] brings this action against her employers Lo Sewing, Inc. ("Lo Sewing"), SL Sewing Inc. ("SL Sewing") (collectively, "Corporate Defendants"), Salim Abouhamra a/k/a Salim Abohamra a/k/a Salim Hamra ("Defendant Abohamra"), and Maria Gallegos ("Defendant Gallegos") (collectively, "Defendants") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the New York Labor Law ("NYLL"), including Articles 6 and 19 thereof.

Plaintiffs are garment workers employed at Defendants' Brooklyn sewing facility. Defendants paid Plaintiffs by the piece rather than by the hour, causing them to be systematically underpaid below the applicable federal and New York minimum wage. Each Plaintiff worked more than forty hours per week without any overtime compensation. Defendants paid Plaintiffs on an irregular basis that frequently violated NYLL § 191's weekly-pay requirement for manual workers, and Defendants never provided the wage notices or pay stubs required under NYLL § 195. To conceal these violations, Defendant Salim required Plaintiffs to sign fraudulent time cards falsely indicating that she was paid at the minimum wage.

Despite being properly served with the Complaint, First Amended Complaint, and Second Amended Complaint, none of the Defendants has appeared, answered, or otherwise responded. The Clerk of Court has entered the default of Defendants Lo Sewing, Inc., SL Sewing Inc., Maria Gallegos, and Salim Abouhamra pursuant to Federal Rule of Civil Procedure 55(a). Plaintiffs now moves for a default judgment against those four Defendants, and respectfully requests that this Court award unpaid minimum wages, unpaid overtime wages, liquidated damages, NYLL § 195

---

[1] Plaintiff Rufina Hernandes is a Plaintiff in this case. Unfortunately Plaintiff has been unable to contact Ms. Hernandes who is apparently hospitalized and will be requesting under separate cover a one week extension to file a supplemental motion on her behalf.

1

statutory damages, NYLL § 191 damages for untimely payment, pre-judgment interest, and attorneys' fees and costs.

## STATEMENT OF FACTS

### A. The Parties

Defendant Lo Sewing, Inc. ("Lo Sewing") is a garment factory located in Brooklyn, New York that performs bulk garment manufacturing, pattern cutting, industrial sewing, and final assembly for companies in the fashion industry. (Second Am. Compl. Doc. No. 24 ¶¶ 3, 13, 18; Sangurima Decl. ¶ 3; Reyes Decl. ¶ 2; Meza Decl. ¶ 4.)

Defendant SL Sewing Inc. ("SL Sewing") was incorporated in January 2023. Lo Sewing was dissolved in January 2024. SL Sewing is a mere continuation and successor of Lo Sewing: the same individuals owned and managed both entities, the workforce, worksite, equipment, products, supervisory personnel, and pay practices remained identical before and after SL Sewing's incorporation, and Plaintiffs' work circumstances did not change. Although Lo Sewing was formally dissolved, Plaintiffs and other employees have continued to refer to their employer as "Lo Sewing," consistent with the continuity between the two entities described above rather than any actual change in their working conditions. (Second Am. Compl. Doc. No. 24 ¶¶ 21, 23–36; Sangurima Decl. ¶ 7; Zumba Decl. ¶ 5; Meza Decl. ¶ 8.)

Defendant Salim Abouhamra is the owner of the Corporate Defendants. He personally hired many Plaintiffs and, at all relevant times, has held supervisory authority over Plaintiffs, including setting their schedules, assigning tasks, reviewing their work, and setting their rates of pay. He has the power to hire and fire employees. (Second Am. Compl. Doc. No. 24 ¶ 38; Sangurima Decl. ¶¶ 6, 9; Reyes Decl. ¶¶ 6, 8–9; Zumba Decl. ¶¶ 2, 4, 6; Meza Decl. ¶¶ 5–6.)

Defendant Maria Gallegos is an agent/supervisor of the Corporate Defendants who assigns tasks to Plaintiffs, controls the terms and conditions of their work, assesses the quality of their work, and has authority to take disciplinary action against them. Since Plaintiffs filed suit in April 2024, Defendant Gallegos has worked alongside Defendant Abouhamra to assign Plaintiffs' work. (Second Am. Compl. Doc. No. 24 ¶ 39; Sangurima Decl. ¶¶ 9, 11; Reyes Decl. ¶¶ 9–10; Zumba Decl. ¶¶ 6–7; Meza Decl. ¶¶ 6–7.)

Defendants employ a number of employees, including Plaintiffs. Defendants employ no fewer than 40 employees (Second Am. Compl. Doc. No. 24 ¶ 77).

Defendants pay Plaintiffs by the piece rather than by the hour. Defendants paid Plaintiffs per-item rates ranging from approximately 2 to 60 cents per item, resulting in inconsistent weekly pay despite Plaintiffs regularly working the same number of hours. Each Plaintiff specializes in certain items, which limits the price range of items she or he is assigned. (Second Am. Compl. Doc. No. 24 ¶¶ 53–55; Sangurima Decl. ¶¶ 16, 19; Reyes Decl. ¶¶ 16, 25; Zumba Decl. ¶¶ 14, 17; Meza Decl. ¶¶ 13, 15)

All Plaintiffs regularly work more than forty (40) hours per week. Defendants, however, never paid them overtime premium pay for hours worked in excess of forty in a workweek. (Second Am. Compl. Doc. No. 24 ¶49; Sangurima Decl. ¶ 20; Reyes Decl. ¶ 26; Zumba Decl. ¶ 18; Meza Decl. ¶ 16.) Defendants pay Plaintiffs irregularly, with no standard payday, typically between one and three weeks apart, and on occasion Plaintiffs have gone unpaid for over a month. (Second Am. Compl. Doc. No. 24 ¶¶ 50–51; Sangurima Decl. ¶¶ 21, 27; Reyes Decl. ¶ 23; Zumba Decl. ¶¶ 19–20; Meza Decl. ¶¶ 17–18.)

Defendant Abouhamra requires Plaintiffs to punch, and sign, timecards that falsely reflect payment of minimum wage, when in fact Plaintiffs are paid solely on a per-piece basis. Plaintiffs

are reluctant to refuse to sign these fraudulent cards for fear of not being paid or suffering other retaliation. (Second Am. Compl. Doc. No. 24 ¶¶ 62–63, 66; Sangurima Decl. ¶¶ 28–29; Reyes Decl. ¶¶ 27–28; Zumba Decl. ¶¶ 27–28; Meza Decl. ¶¶ 25–26.)

Defendant Abouhamra keeps all company records relating to pay. Plaintiffs have never been provided with wage notices at hiring under NYLL § 195(1) or wage statements under NYLL § 195(3). (Second Am. Compl. Doc. No. 24 ¶¶ 67–69; Sangurima Decl. ¶ 30; Reyes Decl. ¶ 29; Zumba Decl. ¶ 29; Meza Decl. ¶ 27.) Defendants have paid Plaintiffs primarily, though not exclusively, in cash. (Second Am. Compl. Doc. No. 24 ¶¶ 64–65.)

Defendants are aware that Plaintiffs are entitled to the minimum wage and other required pay. For example, when Plaintiff Maria Reyes asked Defendant Abouhamra for proof of income to renew her health insurance, he provided a document falsely stating she was paid $17.00 per hour for 15 hours per week ($255.00 per week total) and asked her to sign it, which she refused because the information was false. (Reyes Decl. ¶¶ 19–20.)

## II. PLAINTIFF-SPECIFIC FACTS

### A. Jose Gabriel Sangurima

Plaintiff Sangurima has been employed by Lo Sewing since approximately June 2018, when he was hired on the spot by then-manager Cesar after inquiring about work at Lo Sewing's storefront in Sunset Park, Brooklyn. He has worked there continuously since, aside from Lo Sewing's COVID-19 closure from likely March 22, 2020 to August 2020, and remains currently employed there.[2] (Second Am. Compl. Doc. No. 24 ¶ 10; Sangurima Decl. ¶¶ 2, 4–5.)

Cesar supervised Plaintiff Sangurima until approximately one year into his employment (c. 2019), when Defendant Gallegos replaced Cesar as his supervisor. Since Plaintiff Sangurima filed

---

[2] Plaintiffs likely stopped working on March 22, 2020 when New York State shut down most businesses because of COVID-19. Executive Order No. 202.8 (EO 202.8).

suit in April 2024, Defendant Abouhamra has also directly set his schedule and assigned him tasks alongside Defendant Gallegos. (Sangurima Decl. ¶¶ 8–11.) Plaintiff Sangurima's job duties consist of sewing and altering clothing. His regular schedule is Monday through Friday, from approximately 9:00–9:30 a.m. to 6:30–7:00 p.m., Sunday from 9:00 a.m. to 4:00 p.m., and Saturday from 9:00 a.m. to 7:00 p.m. two or three times a month. In 2023, Plaintiff Sangurima stopped working Sundays and in 2026 he has not regularly worked weekends at all. (Second Am. Compl. Doc. No. 24 ¶ 45; Sangurima Decl. ¶¶ 13–14.)

Plaintiff Sangurima is not salaried and is paid solely per item finished, generally at a rate of approximately 11 cents per item for his entire employment. Plaintiff Sangurima estimates he averages about $280 per week or around $50–60 per day. (Second Am. Compl. Doc. No. 24 ¶¶ 54, 57; Sangurima Decl. ¶¶ 16, 18.)

Plaintiff Sangurima has never received overtime pay despite regularly working more than forty hours per week. Lo Sewing has no standard payday and typically pay Plaintiff Sangurima every three weeks, and even up to a month. (Sangurima Decl. ¶¶ 20–21, 27.) Defendants paid him exclusively in cash throughout his employment, with one exception: in March or April 2026, after he complained that he and his wife (Plaintiff Maria Zumba Quinde) were each owed nearly a month's pay, Defendant Abouhamra paid them by check. However, both checks bounced, and Defendant Abouhamra paid them in cash about a week later. Since then Plaintiff Sangurima has asked to be, and has been, paid exclusively in cash. (Sangurima Decl. ¶ 22.)

From January to March 2026 and again from June 2026 to present, work slowed and he was offered only one to three days of work per week (half-days), for which he was paid approximately $300 every two to three weeks. From April to May 2026, work picked up and he worked five days a week from 9:00 a.m. to 7:00 p.m. (Sangurima Decl. ¶¶ 24–26.)

In the summer of 2025, Rafoul Abouhamra, Defendant Salim Abouhamra's brother, summoned Plaintiff Sangurima to his office, told him that his brother had no money to pay Plaintiffs, and asked him to sign a blank sheet of paper that Rafoul said he would give to his son, an attorney, to remove Plaintiff Sangurima out of the lawsuit. Plaintiff Sangurima refused to sign. (Sangurima Decl. ¶ 23.)

Throughout his employment he has been required to punch and sign timecards falsely reflecting payment of minimum wage, and he has never been provided any wage statements. (Sangurima Decl. ¶¶ 28–30.)

### B. Maria Reyes

Plaintiff Reyes has been employed by Lo Sewing since approximately 2011 and remains currently employed there, apart from approximately three months off beginning around March 2020 due to the COVID-19 pandemic and a week and a half off in March 2023. (Reyes Decl. ¶¶ 4–5.)

Plaintiff Reyes was hired directly by Defendant Abouhamra following a recommendation from her prior employer. At hiring, Defendant Abouhamra told Plaintiff Reyes that she would be paid by the piece rather than by the hour. Although Plaintiff Reyes objected that she had always been paid hourly, he insisted this was how his company operated. (Reyes Decl. ¶¶ 6–7.)

Plaintiff Reyes' job duties consist of sewing and altering garments. Her regular schedule is six days per week, from 8:30 or 9:00 a.m. until 6:00 or 6:20 p.m., with an hour taken for lunch. In 2026, her weekend work diminished to approximately two weekends per month. (Second Am. Compl. Doc. No. 24 ¶ 47; Reyes Decl. ¶¶ 3, 11–13.)

Plaintiff Reyes is not salaried and is paid per item finished, which is typically between 2 and 50 cents per item (approximately 2 cents per hanger loop, 8 cents per label, and 20 to 30 cents

for affixing pockets). Plaintiff Reyes typically earns between $30.00 and $40.00 per day. For example, Plaintiff Reyes was recently paid $36.00 for affixing labels to 900 shirts at 4 cents per label, work that took her eight to nine hours. (Second Am. Compl. Doc. No. 24 ¶ 59; Reyes Decl. ¶¶ 16–17.)

Defendants pay Plaintiff Reyes irregularly, typically every two to three weeks, with no standard payday. For example, when Plaintiff Reyes was owed approximately $600 in back pay and asked Defendant Abouhamra for payment, he told her he did not have the money and, after repeated follow-up, paid her only $200. (Reyes Decl. ¶¶ 23–24.) Plaintiff Reyes has never received overtime pay despite regularly working more than forty hours per week. Throughout her employment she has been required to punch and sign timecards falsely reflecting payment of minimum wage, typically required to sign on Mondays, and has never been provided any wage statements. (Reyes Decl. ¶¶ 26–29.)

Shortly after this lawsuit began in 2024, Rafoul Abouhamra confronted and yelled at Ms. Reyes, asking why she had sued his brother if she was being paid. Since then, Defendants have ignored the substance of the lawsuit while joking about it at work, including comments such as "go tell your lawyer" and "careful not to yell or she will sue you." Ms. Reyes states her working conditions have worsened since she filed suit. (Reyes Decl. ¶¶ 32–34.)

*C. Maria Zumba Quinde*

Plaintiff Maria Zumba Quinde (who now goes by Maria Zumba) has been employed by Lo Sewing since the summer of 2019. She learned of the job through her husband and co-Plaintiff Jose Gabriel Sangurima, who was already working there, and was hired directly by Defendant Abouhamra. She has worked continuously since, apart from Lo Sewing's COVID-19 closure from

approximately March to August 2020, and remains currently employed there. (Second Am. Compl. Doc. No. 24 ¶ 11; Zumba Decl. ¶¶ 2–3.)

Plaintiff Zumba's job duties consist of sewing and altering clothing items. Her regular schedule is five days a week, from 8:30 a.m. to 6:30 or 7:00 p.m. During slower periods, particularly January through March and June through the present in 2026, she has worked substantially fewer hours, as few as two to three days a week for approximately fifteen hours total, picking back up to five days a week from April to May 2026. (Second Am. Compl. Doc. No. 24 ¶ 46; Zumba Decl. ¶¶ 9–11, 23–25.)

Plaintiff Zumba is not salaried and is paid per item finished, between 6 and 11 cents per item. She completes approximately 500 to 600 items per week and makes approximately $40 to $50 per day. (Zumba Decl. ¶¶ 14–16.) Plaintiff Zumba has never received overtime pay despite regularly working more than forty hours per week. Lo Sewing has no standard payday, and she is typically paid every three to four weeks. Since approximately 2022 or 2023, Defendant Abouhamra has often shorted her pay by withholding part of what is owed for a given week, promising to add the deficit to a future payment. (Zumba Decl. ¶¶ 18–19, 21.)

Plaintiff Zumba has been paid exclusively in cash throughout her employment, with one exception: in March or April 2026, after her husband complained that they were each owed nearly a month's pay, Defendants paid them by personal check; both checks bounced, and Defendant Abouhamra paid them in cash about a week later. Since then, at their request, she has been paid only in cash. (Zumba Decl. ¶ 26.) Throughout Plaintiff Zumba's employment she has been required to punch and sign timecards falsely reflecting payment of minimum wage, and she has never been provided any wage statements. (Zumba Decl. ¶¶ 27–29.)

**D. Reyna Meza**

Plaintiff Reyna Meza has been employed by Lo Sewing since approximately the summer of 2011, when she was hired by then-manager Cesar on a friend's recommendation. Her employment has been continual, aside from a period during the COVID-19 pandemic in 2020, and she remains currently employed there. (Second Am. Compl. Doc. No. 24 ¶ 9; Meza Decl. ¶¶ 2–3.)

Plaintiff Meza's job duties consist of sewing and altering clothing items. She normally works five days a week from 9:00 a.m. to 6:00 p.m., and approximately once a month also works both Saturday and Sunday, from 8:30 a.m. to approximately 7:00 p.m. (Second Am. Compl. Doc. No. 24 ¶ 44; Meza Decl. ¶ 10.) Plaintiff Meza is not salaried and is paid per item finished, between 5 and 60 cents per item. She completes approximately 750 items per week and is paid somewhere between $250 and $350 per week. (Meza Decl. ¶¶ 13–14.) Plaintiff Meza has never received overtime pay despite regularly working more than forty hours per week. Lo Sewing has no standard payday and has paid Plaintiff Meza every three weeks (Meza Decl. ¶¶ 16–17, 22.) From the start of Plaintiff Meza's employment through early 2024, she was paid entirely in cash. Beginning in early 2024, Lo Sewing began paying her mostly by check, with cash used only occasionally since. (Meza Decl. ¶¶ 23–24.)

During the COVID-19 pandemic, Lo Sewing mostly shut down beginning in March 2020, except that Plaintiff Meza was offered two months of work sewing hospital gowns and masks, supervised by Defendant Abouhamra and Cesar, six days a week from 9:00 a.m. to 7:00 p.m. Plaintiff Meza worked one month performing this work before leaving due to contracting COVID-19, and did not return until Lo Sewing fully reopened in August 2020. For that one month of pandemic work she earned between $800 and $1,000 in cash, paid about six weeks late, after which her pay reverted to its normal, lower level. (Meza Decl. ¶¶ 19–20.)

Throughout Plaintiff Meza's employment she has been required to punch and sign timecards falsely reflecting payment of minimum wage, and she has never been provided any wage statements. (Meza Decl. ¶¶ 25, 27.)

**PROCEDURAL HISTORY**

On April 17, 2024, Plaintiffs filed their original Complaint against Defendants Lo Sewing, Inc., Maria Gallegos, and Selin Lnu. (ECF No. 1.) Defendant Lo Sewing, Inc. was served on May 6, 2024 through the New York Secretary of State pursuant to Business Corporation Law ("BCL") § 306, by delivery of two copies of the Summons and Complaint to an authorized agent at 1 Commerce Plaza, Albany, New York 12260. (ECF No. 7, filed May 14, 2024.)

Defendant Selin Lnu, who was later identified in this procedural history as Defendant Salim Abouhamra, was served on May 20, 2024, at 80 39th Street, Suite 301, Brooklyn, New York 11232, by delivering the Summons and Complaint to a co-worker of suitable age and discretion, followed by a mailing on May 21, 2024. (ECF No. 10, filed May 24, 2024.) Defendant Maria Gallegos was served on May 20, 2024, at the same address, by delivering the Summons and Complaint to the same co-worker, followed by a mailing on May 21, 2024. (ECF No. 9, filed May 24, 2024.)

On February 18, 2025, Plaintiffs filed the Amended Complaint (ECF No. 18), adding Defendant SL Sewing Inc. as a Corporate Defendant based on its integrated-enterprise relationship with, and status as successor to, Lo Sewing. Defendant SL Sewing Inc. was thereafter served on March 3, 2025, through the New York Secretary of State pursuant to BCL § 306, by delivery of two copies of the Summons and Amended Complaint to an authorized agent at 1 Commerce Plaza, Albany, New York 12260. (ECF No. 21, filed June 6, 2025.)

On August 1, 2025, Plaintiffs filed the Second Amended Complaint (ECF No. 24) identifying Defendants Salim Abouhamra a/k/a Salim Abohamra a/k/a Salim Hamra as the real name of Defendant Salim Lnu. Defendant Salim Abouhamra was thereafter served on January 12, 2026, at 80 39th Street, Suite 301, Brooklyn, New York 11232, which is his actual place of business, by delivering the Summons and Second Amended Complaint to a co-worker of suitable age and discretion, followed by a mailing that same day. (ECF No. 28, filed January 20, 2026.)[3]

In addition to formal service, Plaintiffs' counsel also discussed this case with an individual who identified himself as the son of Rafoul Abouhamra, who was a Defendant for a short period of time. This individual identified him as an attorney and further advised Plaintiffs' counsel that he was Salim Abouhamra's nephew. Taubenfeld Decl. at ¶ 5

Despite formal service and informal notification of this lawsuit, no Defendant has filed an answer or otherwise moved in response to the Complaint, the Amended Complaint, or the Second Amended Complaint. On April 8, 2026, the Clerk of Court entered the default of Defendant Lo Sewing, Inc., Defendant Maria Gallegos, and Defendant SL Sewing Inc., each with respect to the Second Amended Complaint, pursuant to Federal Rule of Civil Procedure 55(a). (ECF No. 33.) On April 24, 2026, the Clerk of Court entered the default of Defendant Salim Abouhamra a/k/a Salim Abohamra a/k/a Salim Hamra, with respect to the Second Amended Complaint, pursuant to Federal Rule of Civil Procedure 55(a). (ECF No. 34.)

## I.      Plaintiffs Are Entitled to Default Judgment Against Defendants

Federal Rule of Civil Procedure 55 and Local Civil Rule 55.2 entitle Plaintiffs to default judgment against Defendants because Defendants failed to appear, answer, or otherwise respond

---

[3] The Second Amended Complaint also added Defendant Rafoul Abouhamra a/k/a Rafoul Abohamra a/k/a Rafoul Abou Hamra. On January 20, 2026, Plaintiffs filed a Notice of Voluntary Dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), dismissing without prejudice all claims against Defendant Rafoul Abouhamra a/k/a Rafoul Abohamra a/k/a Rafoul Abou Hamra. (ECF No. 27.).

to the Summons and Complaint, Amended Complaint, or Second Amended Complaint.

Federal Rule of Civil Procedure 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Here, as the Affidavits of Service and Certificates of Default show, Defendants failed to plead or otherwise defend. (ECF Nos. 7, 9, 10, 21, 28, 33, 34.) Defendants Lo Sewing, Inc. and SL Sewing Inc. were properly served via the New York Secretary of State as permitted by the Federal Rules of Civil Procedure, which incorporate New York State's rules and allow service on the Secretary of State. (ECF Nos. 7, 21.) See Elvey v. Silver's Crust W. Indian Rest. & Grill, Inc., No. 18CIV126FBVMS, 2019 WL 3937126, at *3 (E.D.N.Y. July 3, 2019) (service via NYS Secretary of State effective under the FRCP). Individual Defendants Maria Gallegos and Salim Abouhamra a/k/a Salim Abohamra a/k/a Salim Hamra were each served through leave-and-mail service by leaving a copy of the appropriate Summons and Complaint with a co-worker of suitable age and discretion at Defendants' place of business and then mailing a copy to that address, which complies with C.P.L.R. § 308(2). (ECF Nos. 9, 10, 28.) See Vazquez v. Wally's Deli & Grocery Corp., 482 F. Supp. 3d 178, 183 (S.D.N.Y. 2020). [4]

Aside from formal service, Plaintiffs' counsel discussed the case with an individual who identified himself as the son of former Defendant Rafoul Abouhamra and nephew of Defendant Salim Abouhamra. (Taubenfeld Decl. at ¶ 5). Defendants were therefore provided with ample

---

[4] Although Plaintiffs did not serve each Defendant with a copy of each Complaint, they were not obligated to do so. Given that the original Defendants failed to appear, and Plaintiffs did not add new claims in the Amended Complaints, Plaintiffs were not required to serve them under Fed.R.Civ.P. 5(a)(2). De Curtis v. Ferrandina, 529 F. App'x 85, 86 (2d Cir. 2013) (service of amended complaint on defaulting defendants not required unless the amended complaint adds a new claim). Allstate Ins. Co v. Yadgarov, No. 11-CV-6187 PKC VMS, 2014 WL 860019 at *6 (E.D.N.Y. Mar. 5, 2014) (plaintiff not required to serve Amended Complaint on defaulting Defendant when there were no new claims as to that defendant); Georg Neumann GmbH v. GoToToolz, Ltd., No. 23-CV-5808 (KAM)(LB), 2024 WL 3344013, at *2 n.1 (E.D.N.Y. July 9, 2024) (same). Plaintiffs properly served each Defendant with the operative complaint.

opportunity and time to respond and failed to do so. As a result of proper service, the Clerk of Court entered default against Defendants Lo Sewing, Inc., Maria Gallegos, and SL Sewing Inc. (ECF No. 33), and against Defendant Salim Abouhamra a/k/a Salim Abohamra a/k/a Salim Hamra (ECF No. 34).

"Once the clerk's certificate of default is issued, the moving party may then make an application for entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b). . . ." Joseph v. HDMJ Rest., Inc., 970 F. Supp. 2d 131, 141 (E.D.N.Y. 2013); see also FED. R. CIV. P. 55(b)(2). "A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true." Joseph, 970 F. Supp. 2d at 141. "A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability." Id. The Second Circuit uses the following factors when determining whether to grant a default judgment: "(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." Id. (internal citations omitted).

Here, Plaintiffs are entitled to a default judgment because: (1) Defendants defaulted willfully; (2) Defendants have presented no defense to Plaintiffs' claims; and (3) denial of the motion would cause Plaintiffs to suffer undue prejudice because their rights under the Fair Labor Standards Act and New York Labor Law would remain unvindicated.

### A. Defendants' Default Was Willful

The willfulness factor weighs in favor of default judgment. Defendants received proper service and notice of this action, as well as informal notice through court orders served on them by mail and text message, yet they failed to appear or otherwise respond to the Summons and

Complaint, the Amended Complaint, or the Second Amended Complaint over the course of more than two years. Such "non-appearance and failure to respond to Plaintiff[s'] Complaint … indicates willful conduct." <u>Santana v. Latino Express Restaurants, Inc.</u>, 198 F. Supp. 3d 285, 291 n.2 (S.D.N.Y. 2016) (citing <u>Indymac Bank, F.S.B. v. National Settlement Agency, Inc.</u>, No. 07CV6865–LTS–GWG, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007)). Further, Defendants plainly have knowledge of this case. As noted above, Plaintiff's counsel discussed this case with Defendant Abouhamra's nephew. Further, Raful Abouhamra, Defendant Abouhamra's brother, personally discussed this lawsuit with Plaintiffs Sangurima and Reyes on separate occasions, including by asking Plaintiff Sangurima to sign paperwork purporting to withdraw him from the case. Despite all of this notice, Defendants have failed to respond to this lawsuit at any point in the more than two years since it was filed. Defendants have therefore willfully defaulted.

**B. Defendants Have No Meritorious Defense**

The second factor, examining the presence or absence of any meritorious defense, also weighs in favor of default judgment. Courts are "unable to determine whether Defendants would be able to present any meritorious defense" when they fail to appear. <u>Santana</u>, 198 F. Supp. 3d at 291 n.2; <u>see also Joseph</u>, 970 F. Supp. 2d at 143 ("Where a defendant fails to answer the complaint, courts are unable to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations."). When no defense is presented, as here, "the allegations in the plaintiff's complaint are deemed admitted." <u>Joseph</u>, 970 F. Supp. 2d at 143; <u>see also Spring Homes LLC v. Rivera</u>, No. 14-cv-6605, 2016 WL 5793196, at *4 (E.D.N.Y. Aug. 16, 2016) ("The court accepts as true the well-pleaded allegations of the Complaint as to liability, drawing all reasonable inferences in favor of the plaintiff"); <u>Finkel v. Robco Elec. Corp.</u>, No. 11-cv-2353, 2011 WL 3204603, at *2 (E.D.N.Y. July 27, 2011) ("Upon entry of default, a court should accept as true all

factual allegations in the complaint, except those relating to damages"). This acceptance of Plaintiffs' pled allegations is warranted when, as here, there are no "grounds for believing the defaults are based on a good-faith mistake or technicality." J & J Sports Prods., Inc. v. Ernest, No. 06-cv-1387, 2007 WL 2891063, at *2 (E.D.N.Y. Sept. 28, 2007). Further, Defendants have continued to pay Plaintiffs improperly in the years since this case started. Defendants therefore cannot assert a meritorious defense.

**C. Denial of Default Judgment Would Prejudice Plaintiffs**

The third and final factor, undue prejudice to Plaintiffs, also weighs in favor of default judgment. Courts must consider "the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." Joseph, 970 F. Supp. 2d at 141. The level of prejudice to a plaintiff is high when, as here, "there are no additional steps available to secure relief in this Court." Id. at 148. Here, as in Joseph, "[w]ithout the entry of a default judgment, Plaintiff[s] would be unable to recover for the claims adequately set forth in the Complaint." Id.; see also Santana, 198 F. Supp. 3d at 291 n.2 (noting that denial of default judgment would be prejudicial to the plaintiff because non-appearing defendants owed the plaintiff wages).

Because each factor weighs in favor of default judgment for Plaintiffs, the Court should enter a default judgment.

**II. The Deemed-Admitted Allegations Present Valid Claims.**

Though the Second Amended Complaint's facts are deemed admitted through Defendants' failure to respond, "the allegations set forth in the complaint" must also "state valid claims." Joseph, 970 F. Supp. 2d at 144. As outlined below, the Second Amended Complaint successfully pleads valid claims on behalf of each Plaintiff for: failure to pay overtime wages under the Fair Labor Standards Act ("FLSA") (first claim) and New York Labor Law ("NYLL") (second claim);

failure to pay minimum wage under the FLSA (third claim) and NYLL (fourth claim); failure to provide proper notice of pay and pay stubs under the NYLL (fifth claim); and failure to timely pay wages under the NYLL (sixth claim).

### A. Plaintiffs Are Covered by the FLSA and NYLL

Each Plaintiff is covered by the FLSA. Plaintiffs have alleged that Defendants are an "[e]nterprise engaged in commerce or in the production of goods for commerce." Elvey, 2019 WL 3937126, at *5. Specifically, they have alleged that Defendants earned more than $500,000 in gross revenue annually. (Second Am. Compl. Doc. No. 24 ¶ 17.) This allegation is sufficient to establish that Defendants earned the annual minimum of $500,000 to be covered by the FLSA. Vazquez, 482 F. Supp. 3d at 184 (stating the $500,000 minimum in the complaint is sufficient alone to establish enterprise coverage). Further, each Plaintiff handled tools and materials, specifically sewing supplies, that almost certainly traveled through interstate commerce. (Second Am. Compl. Doc. No. 24 ¶ 18.) In any event, the Court may infer from the nature of Plaintiffs' work and the fact that Defendants operate a garment factory that Plaintiffs worked with goods that traveled through interstate commerce. Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) (finding it "reasonable to infer" that at least some materials used by a restaurant moved through interstate commerce). Accordingly, Plaintiffs have established that Defendants are an enterprise engaged in commerce and are therefore covered by the FLSA. And because Plaintiffs are covered by the FLSA, they are covered by the NYLL, because the "NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." Elvey, 2019 WL 3937126, at *6.

The FLSA has a maximum three-year statute of limitations if the employer's conduct is willful, but the NYLL permits Plaintiffs to bring claims going back six years. Elvey, 2019 WL

3937126, at *8. Plaintiffs have alleged that Defendants engaged in willful misconduct, which is sufficient given Defendants' default. (Second Am. Compl. Doc. No. 24 ¶¶ 61–63, 68–71, 85–86, 90–91, 96, 101, 106, 111.) See Luna v. Gon Way Constr., Inc., No. 16CIV1411ARRVMS, 2017 WL 835321, at *9 (E.D.N.Y. Feb. 14, 2017) ("By virtue of Defendants' default, combined with Plaintiffs' allegations that Defendants 'willfully' violated the FLSA . . . the three-year statute of limitations applies to Plaintiffs' FLSA claims."). In any event, Plaintiffs Reyes and Meza may recover under the NYLL for six years and further may recover for an additional 228 days during which the statute of limitations was tolled in 2020 under then-Governor Cuomo's executive orders and may assert claims back to September 1, 2017, which is 6 years and 228 days prior to the April 17, 2024 filing date. Marquez v. Indian Taj, Inc., No. 20-CV-5855 (DG)(RML), 2022 WL 4485948, at *2 (E.D.N.Y. Aug. 5, 2022).

**B. Defendants Violated the FLSA and NYLL by Not Paying Time-and-a-Half for Overtime Hours**

Defendants failed to pay each Plaintiff proper overtime pay under the FLSA and NYLL. Federal and State law require employers to pay employees one and a half times their regular rate of pay for hours worked in excess of forty in a given week. See Elvey, 2019 WL 3937126, at *8; see also 29 U.S.C. § 207; NYLL § 663.1. Each Plaintiff was an employee of Defendants. Their pled facts and declarations set out each Plaintiff's usual weekly schedule (Second Amend. Complaint. ¶¶ 43–48; Sangurima Decl. ¶¶ 13–14; Reyes Decl. ¶¶ 11–13; Zumba Decl. ¶¶ 9–11; Meza Decl. ¶ 10), and those schedules in turn show that each Plaintiff routinely worked more than 40 hours a week. Defendants failed to pay any of them time-and-a-half for their overtime hours, in violation of the FLSA and NYLL. (Second Amend. Complaint. ¶ 49; Sangurima Decl. ¶ 20; Reyes Decl. ¶ 26; Zumba Decl. ¶ 18; Meza Decl. ¶ 16.) Accordingly, Plaintiffs have established their claims for overtime pay under the FLSA and NYLL.

**C. Defendants Violated the FLSA and NYLL by Not Paying the Required Minimum Wage**

Defendants failed to pay each Plaintiff the required minimum wage under the NYLL throughout their employment. Starting December 31, 2016, New York City employers with eleven or more employees were required to pay employees a minimum wage of $11.00 per hour, then $13.00 per hour starting on December 31, 2017, and $15.00 per hour on December 31, 2018. That that rate increased to $16.00 on January 1, 2024, $16.50 on January 1, 2025, and $17.00 on January 1, 2026. NYLL § 652(1)(a)(i)–(iv). Rather than pay an hourly wage, Defendants paid each Plaintiff a piece rate for each item sewn, resulting in an effective hourly rate calculated by dividing weekly piece-rate pay by hours worked well below the applicable minimum wage in every year of employment. (Second Amend. Complaint. ¶¶ 52–60; Sangurima Decl. ¶¶ 16, 18; Reyes Decl. ¶¶ 16–17; Zumba Decl. ¶¶ 14–16; Meza Decl. ¶¶ 13–14.) The specific effective hourly rate for each Plaintiff, and the resulting minimum wage shortfall for each year of their employment, is set out in the damages calculations below. Accordingly, Plaintiffs have established their minimum wage claims under the FLSA and NYLL.

**D. Defendants Violated the NYLL by Failing to Pay Plaintiffs Timely**

Defendants violated NYLL § 191 by failing to pay each Plaintiff weekly. "Under the NYLL, employers must pay manual workers weekly and no later than seven days after the end of the week in which the wages were earned." Garzon v. Bldg. Servs. Inc., No. 24 CIV. 5429 (JLR)(RFT), 2025 WL 1871171, at *9 (S.D.N.Y. July 2, 2025), report and recommendation adopted, No. 1:24-CV-05429 (JLR), 2025 WL 2062741 (S.D.N.Y. July 23, 2025). "The NYLL defines a manual worker as a 'mechanic, workingman or laborer.'" Tzilin v. Jimmy G Constr. Corp., No. 23-CV-4047 (ENV)(MMH), 2024 WL 4309775, at *12 (E.D.N.Y. Sept. 26, 2024) (quoting NYLL § 190(4)). The vast majority of federal courts have determined that NYLL § 191

contains a private right of action allowing a plaintiff to recover damages, including liquidated damages. <u>Tzilin</u>, 2024 WL 4309775, at *13 (citing cases). While a 2025 amendment to NYLL § 198 limited the applicability of liquidated damages in untimely payment situations, it did so only where "the employer paid the employee wages on a regular payday, no less frequently than semi-monthly." NYLL § 198(1-a).

Each Plaintiff is entitled to assert a NYLL § 191 claim. Each sewed articles of clothing and therefore performed manual labor. Further, Defendants paid each Plaintiff irregularly and never paid any of them weekly or even semi-monthly. Instead Defendants typically paid Plaintiffs every two to four weeks and, on occasion, withheld pay for a month or more. (Second Amend. Complaint. ¶¶ 50–51; Sangurima Decl. ¶¶ 21, 27; Reyes Decl. ¶ 23; Zumba Decl. ¶¶ 19–20; Meza Decl. ¶¶ 17–18, 21.) Defendants therefore failed to timely pay Plaintiffs weekly on a regular payday and violated NYLL § 191 as to each Plaintiff.

**E. Wage Theft Prevention Act Violations**

Plaintiffs have alleged sufficient facts to state valid claims for failure to provide proper notice of pay and pay stubs. NYLL § 195(3) requires employers to supply employees with pay stubs ("furnish each employee with a statement with every payment of wages"). These pay stubs must accurately record, among other required information, the number of regular and overtime hours worked. <u>See</u> id. Defendants failed to provide any wage statement to any Plaintiff and paid them almost entirely in cash with no associated pay stubs. (Second Amend. Complaint. ¶¶ 64, 67, 69; Sangurima Decl. ¶ 30; Reyes Decl. ¶ 29; Zumba Decl. ¶ 29; Meza Decl. ¶ 27.) NYLL § 195(1) requires employers to provide a notice at the time of hiring that contains, among other information, the employee's rate of pay, the name of the employer, and the employee's regular pay day. <u>Suarez Castaneda v. F&R Cleaning Servs. Corp.,</u> No. 17-CV-7603 (SJ)(PK), 2019 WL

5694118, at *10 (E.D.N.Y. Mar. 15, 2019), report and recommendation adopted, No. 17-CV-7603 (SJ) (PK), 2019 WL 5693768 (E.D.N.Y. July 8, 2019). Defendants never provided any Plaintiff with this required notice. (Second Amend. Complaint. ¶ 68.) Further, Plaintiffs have indicated that by not receiving these documents, Defendants deprived them of information regarding their hours and pay, which prevented them from properly advocating for themselves. (Second Amend. Complaint. ¶¶ 70–71.) Plaintiffs therefore have standing to assert these claims. Roma v. David Carmili, Physician, P.C., 761 F. Supp. 3d 481, 490 (E.D.N.Y. 2024) (citing Guthrie v. Rainbow Fencing Inc., 113 F.4th 300, 302 (2d Cir. 2024)).

**III. Lo Sewing and SL Sewing Are an Integrated Enterprise, or in the Alternative, SL Sewing Is a Successor to Lo Sewing, and Therefore Both Corporations Are Jointly and Severally Liable**

Both Lo Sewing and SL Sewing are jointly and severally liable to all Plaintiffs. The Court should consider Lo Sewing and SL Sewing a single integrated enterprise for the purposes of the FLSA and NYLL. A "single integrated enterprise" is a theory of employer liability which holds that two nominally separate entities are part of a single integrated enterprise. See Arculeo v. On-Site Sales & Marketing, LLC, 425 F.3d 193, 198 (2d Cir. 2005). In such circumstances, liability will be imposed not only on the nominal employer but also on another entity comprising part of the single integrated employer. Id.; see also Kew Sing Yap v. Mooncake Foods, Inc., 146 F. Supp. 3d 552, 557 (S.D.N.Y. 2015). A single integrated enterprise exists where employers share "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." Galicia v. Ice Cream House on Bedford Ave LLC, No. 16-CV-6738 (CBA)(PK), 2017 WL 6733985, at *2 (E.D.N.Y. Oct. 17, 2017), report and recommendation adopted, No. 16CV6738CBAPK, 2017 WL 6759299 (E.D.N.Y. Dec. 29, 2017). Here, the Corporate Defendants' operations are interrelated, share common management, share employees, and are centrally controlled and/or owned by the

20

Individual Defendants. In the operative Second Amended Complaint, Plaintiffs allege that they and other employees worked for both entities performing the same work from the same location, using the same equipment, and were supervised by the same individuals. (Second Amend. Complaint. ¶¶ 20–21, 25–36.) These allegations are sufficient to establish integrated enterprise liability. See Chica v. Shallu Constr. Corp., 2022 WL 970744, at *5 (E.D.N.Y. Mar. 31, 2022) ("[P]laintiffs have sufficiently pleaded that the operations of the various corporate defendants were interrelated: plaintiffs alleged that they performed tasks on construction sites on behalf of all three corporate defendants.").

In the alternative, SL Sewing is a successor to Lo Sewing. In determining successor liability, courts in this Circuit "focus[ ] on whether the new company has acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations." Bautista v. Beyond Thai Kitchen, Inc., No. 14-cv-4335, 2015 WL 5459737, at *5 (S.D.N.Y. Sept. 17, 2015). Factors considered include: "(1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product." Id.

SL Sewing is essentially identical to Lo Sewing and is therefore a successor. SL Sewing and Lo Sewing are run and managed by the same individuals, and SL Sewing was therefore on notice of the FLSA and NYLL violations alleged here from its incorporation in January 2023.

(Second Amend. Complaint. ¶¶ 21, 24, 29.) Further, Lo Sewing was dissolved in January 2024 and therefore cannot provide relief. (Second Amend. Complaint. ¶¶ 23, 30.) Finally, there is substantial continuity between the businesses: both used the same factory, equipment, and workforce, were operated by the same people, and employed the same unlawful pay practices, and Plaintiffs' work circumstances did not change when SL Sewing was incorporated. (Second Amend. Complaint ¶¶ 25–36.) SL Sewing is therefore a successor of Lo Sewing and liable for all violations under the FLSA and NYLL.

**IV. Individual Defendants Are Individually Liable Under the FLSA and NYLL, and All Defendants Are Jointly and Severally Liable**

All Defendants are jointly and severally liable to all Plaintiffs under the FLSA and NYLL. Under those statutes, to determine whether someone is an employer, courts look at the economic reality and review the following factors: whether the alleged employer "(1) had the power to hire and fire employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." Elvey, 2019 WL 3937126, at *7.

Defendant Salim Abouhamra is, upon information and belief, the owner of Lo Sewing and SL Sewing. (Second Amend. Complaint ¶ 38.) He personally hired many Plaintiffs and, at all relevant times, has set Plaintiffs' schedules, assigned their tasks, reviewed their work, and set their rate of pay; he has the power to hire and fire employees. (Second Amend. Complaint ¶ 38; Sangurima Decl. ¶¶ 6, 9; Reyes Decl. ¶¶ 6, 8–9; Zumba Decl. ¶¶ 2, 4, 6; Meza Decl. ¶¶ 5–6.) Defendant Maria Gallegos is an agent or employee of the Corporate Defendants who supervises Plaintiffs, assigns their tasks, controls the terms and conditions of their work, and has authority to discipline them. (Second Amend. Complaint ¶ 39; Sangurima Decl. ¶¶ 9, 11; Reyes Decl. ¶¶ 9–10; Zumba Decl. ¶¶ 6–7; Meza Decl. ¶¶ 6–7.) These facts easily establish that Defendants

22

Abouhamra and Gallegos are joint employers of each Plaintiff. Elvey, 2019 WL 3937126, at *7. Individual Defendants Abouhamra and Gallegos are therefore jointly and severally liable with the Corporate Defendants for all of Plaintiffs' claims. Id.

**V. Damages**

Plaintiffs are entitled to the damages set forth below (and in Plaintiffs' damages calculations that are attached as Exhibit 4 to the **Taubenfeld Decl.**) for Defendants' unlawful conduct, not including attorneys' fees, costs, and additional interest accruing after the dates used below.

Minimum wage damages are calculated using the New York City minimum wage in effect for employers with eleven or more employees, consistent with the Second Amended Complaint's allegation that Defendants' class of similarly situated employees numbers no fewer than forty. (Second Amend. Compl. ¶ 77.) That rate was $13.00 per hour through December 30, 2018; $15.00 per hour from December 31, 2018 through December 31, 2023; $16.00 per hour in 2024; $16.50 per hour in 2025; and $17.00 per hour in 2026. NYLL § 652(1)(a); 12 NYCRR § 146-1.2. Overtime damages are calculated at one and one-half times the applicable minimum wage, since Defendants' piece-rate pay did not distinguish regular from overtime hours and therefore did not compensate any Plaintiff's overtime hours at any premium rate. See Pest v. Bridal Works of New York, Inc., 268 F. Supp. 3d 413, 428 (E.D.N.Y. 2017) (citing 29 C.F.R. § 778.109 and 12 NYCRR § 142-2.16).

**A. Jose Gabriel Sangurima**

Plaintiff Sangurima worked an average of 70.25 hours per week from the beginning of his employment until 2023, when he stopped working on Sunday. Plaintiff Sangurima worked 9.5 hours per day from Monday through Friday, 7 hours on Sunday, and 10 hours on Sunday 2.5

times a month.[5] In 2023, Plaintiff Sangurima stopped working Sundays and therefore worked 63.25 hours. For most of 2026, Plaintiff Sangurima worked an average of 10 hours but in April and May he worked 50 hours. Plaintiff Sangurima earned $280 a week, except when he earned approximately $150 during the periods in 2026 when he worked 10 hours. Plaintiff Sangurima is entitled to $176,188.98 in minimum wage damages. Plaintiff Sangurima is also entitled to overtime pay at time-and-a-half of the minimum wage or his hourly rate, whichever is higher, and is entitled to $241,864.88 in unpaid overtime wages. Further, Plaintiff Sangurima may recover liquidated damages under the NYLL. The NYLL requires "liquidated damages equal to one hundred percent of the total amount of the wages found to be due," unless the employer "proves a good faith basis to believe that its underpayment of wages was in compliance with the law." NYLL § 198(1-a); see also NYLL § 663(1). Defendants have the burden of showing that liquidated damages are not appropriate, which they cannot meet because they have defaulted. Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 125 (E.D.N.Y. 2011). Plaintiff therefore seeks liquidated damages in the amount of $418,053.86, equal to 100% of Plaintiff Sangurima's combined minimum wage and overtime damages ($241,864.88+$176,188.98).

Finally, Plaintiff Sangurima is also entitled to liquidated damages for untimely wage payments. Anzures v. Maredin Rest. Corp., No. 22-CV-2798-EK-JRC, 2024 WL 1376812, at *15 (E.D.N.Y. Jan. 24, 2024), report and recommendation adopted, No. 22-CV-2798(EK)(JRC), 2024 WL 1367963 (E.D.N.Y. Apr. 1, 2024). Defendants never paid Plaintiff Sangurima weekly and for purposes of this motion, Plaintiff Sangurima conservatively assumes payment on a biweekly basis, even though Defendants in fact paid Plaintiff Sangurima less frequently than that.

---

[5] The formula is 9.5*6+7+(10*(2.5/4)) = 70.25.

Over the 383 weeks[6] Plaintiff Sangurima worked during the recovery period, Plaintiff Sangurima was therefore paid late for half of those weeks, which is 191.5 weeks. Id. at *15 n.12 (calculating half the weeks). At Plaintiff Sagurima's weekly pay of $280, Plaintiff is owed $53,620 (191.5 x $280) for untimely wage payments.

**B. Maria Reyes**

Plaintiff Reyes typically worked 9.5 hours a day with a one hour break six days a week. That schedule changed in 2026 when she started working 6 days a week every other week. Plaintiff Reyes therefore worked 51 hours until 2026 when she started working 46.75 hours.[7] Plaintiff Reyes earned on average $210 dollars weekly for this work. Plaintiff Reyes's minimum wage damages are therefore $197,594.22 and her overtime wages damages are $108,540.75. Liquidated damages total $306,134.97 ($197,594.22+$108,540.75). Plaintiff Reyes has worked 437 weeks through June 30, 2026, half of which she was untimely paid for. untimely wages damages are $45,885.00 (218.50*$210).

**C.      Maria Zumba Quinde.**

Plaintiff Quinde's schedule fluctuated wildly during her employment. In the summer, she typically worked 2 or 3 days a week for 3 or 4 hours a day. Taking the midpoint, she worked 8.75 hours a week. From September through November, she worked 10 hours a day, 6 days a week, and 7 hours on Sunday for a total of 67 hours. From December through May, Plaintiff Quinde worked 10 hours a day for 5 days a week for 50 hours. Plaintiff Quinde earned $45 dollars a day on average, so she made $112.50 in summer ($45*2.5), $315 in the fall ($45*7), and $225 the rest of the year ($45*5). For most of 2026, Plaintiff Quinde worked an average of 10 hours but in April

---

[6] Plaintiff is not requesting untimely payment damages for the periods in 2026 when he worked significantly fewer hours.
[7] The formula is 8.5*6 = 51. In 2026, the formula is 8.5*5.5 = 46.75.

and May she worked 50 hours. During this period, Plaintiff Quinde likely earned $45 a week for most of the year and $225 when she worked 5 days a week. Plaintiff Quinde's minimum wage damages are therefore $107,170.08 and her overtime wages damages are $91,097.68. Liquidated damages total $198,267.76 ($107,170.08 +$91,097.68). Plaintiff Quinde has worked 341 weeks through June 30, 2026, half of which she was untimely paid for. Her weighed weekly pay is $221.42. Plaintiff Quinde's untimely wages damages are $37,752.11 (170.50*$221.42).eks

### D. Reyna Meza

Plaintiff Meza typically worked 9.5 hours a day five days a week and one weekend day a month for 10 hours for a total of 50.125 hours.[8] That schedule remained consistent except for one month in 2020 when Plaintiff Meza worked 6 days a week for 10 hours a day for a total of 60 hours. Plaintiff Meza earned $300 a week except when she earned $900 during the month in 2020. Plaintiff Meza's minimum wage damages are therefore $134,406.27 and her overtime wages damages are $92,363.19. Liquidated damages total $226,769.46 ($134,406.27 +$92,363.19). Plaintiff Meza has worked 455 weeks through June 30, 2026, half of which she was untimely paid for. Plaintiff Meza's untimely wages damages are $68,250 (227.50*$300).

### E. Damages for Wage Notice and Paystub Violations

The remedy for violation of the pay stub law (NYLL § 195(3)) is set forth in NYLL § 198(1-d): a claimant "shall recover in a civil action damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars." Plaintiffs worked well over twenty days during the recovery period without ever receiving a wage statement, and is therefore entitled to the maximum $5,000 under this section. Plaintiff is also entitled to an additional $5,000 under NYLL § 198(1-b), due to

---

[8] The formula is (9.5*5)+(10.5/4) = 50.125.

Defendants' failure to provide Plaintiffs with a wage notice within ten business days of Plaintiffs' first day of employment. Suarez, 2019 WL 5694118, at *10. Plaintiffs therefore seek the maximum of $10,000 total in damages for violations of the Wage Theft Prevention Act.

### F.      Pre-Judgment Interest

Plaintiffs additionally seek an award of prejudgment interest under the NYLL on Plaintiffs' unpaid wages through the date of final judgment. See Fermin, 93 F. Supp. 3d at 48. New York law provides for prejudgment interest at a rate of nine percent per annum. N.Y. C.P.L.R. § 5004. Courts typically calculate interest from the midpoint of the relevant NYLL claim period. See Gortat v. Capala Bros., 949 F. Supp. 2d 374, 386 (E.D.N.Y. 2013); N.Y. C.P.L.R. § 5001(b); Elghourab v. Vista JFK, LLC, No. 1:17-cv-911 (ARR), 2019 WL 2431905, at *12 (E.D.N.Y. June 11, 2019).

Plaintiffs' daily prejudgment interest is calculated as follows:

| Plaintiff | Midpoint | Days Since Midpoint | Minimum Wage and Overtime Damages | Total Daily Interest |
|-----------|----------|---------------------|-----------------------------------|----------------------|
| Meza | 2/7/2022 | 1,618 | $226,769.46 | $55.91 |
| Sangurima | 6/15/2022 | 1,490 | $418,053.86 | $103.08 |
| Reyes | 2/7/2022 | 1,618 | $306,134.97 | $75.48 |
| Quinde | 12/30/2022 | 1,292 | $198,267.76 | $48.88 |

### G.  Post-Judgment Interest.

Plaintiffs are also entitled to post-judgment interest.  Under 28 U.S.C. § 1961, prejudgment interest is required in all civil cases.  Brito v. Marina's Bakery Corp., No. 19CV00828KAMMMH, 2022 WL 875099, at *27 (E.D.N.Y. Mar. 24, 2022).  Plaintiffs are therefore entitled to post-judgment "at the federal statutory rate until the judgment is paid in full."  Id.

**H. The Court Should Increase the Judgment by 15% Should Defendants Not Timely Pay the Judgment.**

The Court should include in the judgment a provision that the judgment automatically increases by 15% if it remains unpaid. Under NYLL § 198(4), if the "total judgment remains unpaid ninety days following judgment or ninety days after the expiration of time to appeal and no appeal is filed (whichever is later), for the total amount of judgment to automatically increase by 15%." Lopez v. Royal Thai Plus, LLC, No. 16-CV-4028-NGG-SJB, 2018 WL 1770660, at *14 (E.D.N.Y. Feb. 6, 2018) (quoting NYLL § 198(4) report and recommendation adopted, No. 16CV4028NGGSJB, 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018). Accordingly, the Court should include such a provision in the judgment and allow the judgment to increase should Defendants not timely pay.

**I. Attorneys' Fees and Costs**

Plaintiff is entitled to $17,601.75 for attorneys' fees and costs. Both the FLSA and NYLL provide for attorneys' fees and costs. Barfield v. New York City Health & Hospitals Corp., 537 F.3d 132, 151 (2d Cir. 2008) (citing 29 U.S.C. § 216(b)); Torres v. Gristede's Operating Corp., 04 CIV. 3316 PAC, 2012 WL 3878144 (S.D.N.Y. Aug. 6, 2012) aff'd, 12-3336-CV, 2013 WL 2257859 (2d Cir. May 22, 2013) (summary order) citing NYLL §§663 and 198.

To establish their entitlement to attorneys' fees, Plaintiff must show "the reasonableness and the necessity of the hours spent and rates charged." Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 51 (E.D.N.Y. 2015). The attorneys' fees requested are reasonable. Mr. Taubenfeld is a partner at Fisher Taubenfeld LLP and bills his work to paying clients at $495 an hour. Mr. Taubenfeld was admitted to the Bar of the State of New York in 2008 and since then has practiced labor and employment law, with a strong focus on wage-and-hour law. Mr. Taubenfeld is a member of the New York chapter of the National Employment Lawyers

Association (NELA-NY) and has been invited to give CLEs on the FLSA. Taubenfeld Decl. ¶ 35. Mr. Taubenfeld has been designated class counsel in a FLSA case in Gonzalez et al v. Allied Concrete Industries Inc. et al., EDNY Case No.: 2:14-cv-4771 (JFB)(AKT) in which the court granted partial summary judgment for Plaintiffs and the class on liability and damages. He has also successfully won appeals in wage-and-hour matters before the Second Circuit and New York courts. Catzin v. Thank You & Good Luck Corp., 899 F.3d 77 (2d Cir. 2018); Hichez v. United Jewish Council of the E. Side, 179 A.D.3d 576, 117 N.Y.S.3d 214 (N.Y. App. Div. 2020). Plaintiff is requesting an hourly rate of $550 for Mr. Taubenfeld's work. An hourly rate of $550 is reasonable for experienced FLSA practioners. Santamaria v. Vee Techs., Inc., No. 22-CV-4472 (AS), 2024 WL 3030539, at *3 (S.D.N.Y. June 17, 2024) (awarding $550 to a partner in a FLSA case). Although courts in this Circuit have often awarded rates lower than $550, those courts often failed to take into inflation when awarding attorneys' fees. Rubin v. HSBC Bank USA, NA, No. 20-CV-4566, 2025 WL 248253, at *6 (E.D.N.Y. Jan. 21, 2025) (determining that given inflation a reasonable hourly rate for a partner ranges between $450-$650). Accordingly $550 is a reasonable rate.

Elissa Devins received a Juris Doctor degree from the N. Cardozo School of Law in New York City and was admitted to the bar of the State of New York in 2002, and subsequently to the United States District Court for the Southern District in 2023, and the United States Eastern District in 2004. Ms. Devins has practiced labor and employment law with a focus on discrimination since being admitted to the New York Bar in 2002. After graduating from law school, she worked as an associate at Herbst & Greenwald, a private firm that specialized in Section 1983 cases and employment discrimination cases for two years before she began as a staff attorney at the New York Legal Assistance Group (NYLAG), a non-profit legal services

organization that has provided legal representation to low wage and immigrant individuals for free or at low cost since 1990. Between 2002 and 2008, she represented clients in Social Security cases and cases involving Medicaid and Public Assistance. She also worked with NYLAG's Special Litigation Unit on several class actions against the City of New York that involved Food Stamps and other public benefits. In 2008, she co-created the Employment Law Project at NYLAG with the goal of continuing and expanding our employment law practice for low-income, underserved New Yorkers who cannot afford legal representation. Since then, as a Coordinating Senior Staff Attorney, she has been representing clients in wage and hour, employment discrimination and leave related case—both with co-counsel, and on her own. Like Mr. Taubenfeld, Plaintiffs are requesting $550 for her work.

Mr. Taubenfeld worked 13.1 hours on this case and Ms. Devins worked 17.5 hours. See Taubenfeld and Devins Decls., **Exhibit 5**. These hours were well expended. The firm drafted the various Complaints, discussed the case with Plaintiff, and drafted this motion. The above hours are therefore reasonable given that the case was litigated before Defendants defaulted. Apolinar v. Glob. Deli & Grocery, Inc., No. 12 CV 3446 RJD VMS, 2013 WL 5408122, at *16 (E.D.N.Y. Sept. 25, 2013) (finding 44.93 hours to be a reasonable amount of time to have spent on a FLSA default action). Plaintiffs are seeking to recover $16,830 in attorneys' fees in this matter.

Plaintiffs seek to recover $771.75 in total costs in this case. The requested costs are reasonable and invoices are submitted herewith. Costs are comprised of the following: a) $405 in filing fees; and b) $366.75 in service of process expenses. These costs were reasonably expended during this litigation and are recoverable.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully requests that this Court enter default judgment against Defendants Lo Sewing, Inc., SL Sewing Inc., Maria Gallegos, and Salim Abouhamra a/k/a Salim Abohamra a/k/a Salim Hamra, jointly and severally, and award:

**Jose Gabriel Sangurima**

(1)     Unpaid    minimum    wages    in    the    amount    of    $176,188.98;

(2)     Unpaid    overtime    wages    in    the    amount    of    $241,864.88;

(3)     NYLL liquidated damages (NYLL-only period) in the amount of $418,053.86;

(4)     NYLL    §    195    statutory    damages    in    the    amount    of    $10,000;

(5)     NYLL § 191 untimely-payment damages in the amount of $53,620.00;

(6)     Pre-judgment interest at 9% per annum from June 15, 2022 through the date of judgment;

**Maria Reyes**

(1)     Unpaid    minimum    wages    in    the    amount    of    $197,594.22;

(2)     Unpaid    overtime    wages    in    the    amount    of    $108,540.75;

(3)     NYLL liquidated damages (NYLL-only period) in the amount of $306,134.97;

(4)     NYLL    §    195    statutory    damages    in    the    amount    of    $10,000;

(5)     NYLL § 191 untimely-payment damages in the amount of $45,885.00;

(6)     Pre-judgment interest at 9% per annum from February 7, 2022 through the date of judgment;

**Maria Zumba Quinde**

(1)     Unpaid    minimum    wages    in    the    amount    of    $108,850.08;

(2)     Unpaid    overtime    wages    in    the    amount    of    $91,097.68;

(3)  NYLL liquidated damages (NYLL-only period) in the amount of $198,267.76;

(4)  NYLL § 195 statutory damages in the amount of $10,000;

(5)  NYLL § 191 untimely-payment damages in the amount of $37,752.11;

(6)  Pre-judgment interest at 9% per annum from December 30, 2022 through the date of judgment;

**Reyna Meza**

(1)  Unpaid minimum wages in the amount of $134,406.27;

(2)  Unpaid overtime wages in the amount of $92,363.19;

(3)  NYLL liquidated damages (NYLL-only period) in the amount of $226,769.46;

(4)  NYLL § 195 statutory damages in the amount of $10,000;

(5)  NYLL § 191 untimely-payment damages in the amount of $68,250.00;

(6)  Pre-judgment interest at 9% per annum from February 7, 2022 through the date of judgment;

**Attorneys' Fees, Costs, and Other Relief (applicable to all Plaintiffs)**

(7)  Reasonable attorneys' fees and costs totaling $17,601.75;

(8)  An order increasing the judgment by 15% if Defendants do not pay within 90 days; and

(9) Such other and further relief as this Court deems just and proper.

Dated: New York, New York
     July 13, 2026

             _/s/ Michael Taubenfeld_____
             Michael Taubenfeld
             FISHER TAUBENFELD LLP

             Elissa Devins
             NEW YORK LEGAL ASSISTANCE GROUP

             *Attorneys for Plaintiffs*